HURON BEHAVIORAL HEALTH v DEPARTMENT OF
COMMUNITY HEALTH

Docket No. 295740. Submitted May 4, 2011, at Detroit. Decided August
4, 2011, at 9:00 a.m.

Huron Behavioral Health petitioned the Huron Circuit Court for
review of the administrative determination by the Department of
Community Health (respondent) that petitioner was not required
to reimburse respondent for rent paid to Huron County for leased
office space. Petitioner, a community mental health (CMH) author-
ity, received state, county and federal funds to provide mental-
health services to residents of Huron County. Petitioner and
respondent had entered into a service contract by which petitioner
agreed to provide the mental-health services in exchange for
reimbursement from the state. The contract required petitioner to
document costs and comply with Office of Management and
Budget (OMB) Circular A-87, which prohibits a provider from
paying rent to a governmental unit if the provider and the
governmental unit are engaged in a less-than-arm's-length trans-
action. Petitioner provided annual budgets to respondent from
1999 to 2006 as required by state and federal funding laws; the
budgets included the cost of rent paid to Huron County. Respon-
dent audited those budgets and determined that the relationship
between petitioner and Huron County was not arm's-length and
that, in accordance with OMB Circular A-87, petitioner was
therefore not entitled to reimbursement for the rent. Petitioner
sought a review hearing of the audit after respondent demanded
reimbursement of rent paid in the amount of $612,985. The
hearing referee found against petitioner on each issue, and respon-
dent entered a final order that adopted the referee's findings. The
court, M. Richard Knoblock, J., determined that petitioner was
entitled to equitable relief because it had detrimentally relied on
respondent's annual approval of its budget, that there was no
improper self-dealing between petitioner and Huron County, and
that the lease contracts were arm's-length transactions. Respon-
dent appealed by delayed leave granted.

The Court of Appeals *held*:

1. Administrative tribunals do not have equitable jurisdiction unless expressly authorized by statute. Nothing in the Administrative Procedures Act, including MCL 24.306, which governs circuit court review of agency decisions, permits a court to set aside an administrative decision on equitable grounds. The court erred by reversing the administrative order on the basis that it was inequitable, but the error was harmless in light of the flaws in the agency's decision.

2. While an agency's interpretation of a statute is entitled to respectful consideration, it is not binding on the courts and cannot conflict with the Legislature's intent as expressed in the language of the statute. MCL 330.1204 provides that a CMH authority is a public governmental entity separate from the county or counties that establish it. CMH authorities are largely autonomous and run independently from the counties. CMH authorities have numerous powers under MCL 330.1205, and the CMH authority's board sets its policies and procedures and handles the day-to-day management of the authority, MCL 330.1204(2) and 330.1226. Under MCL 330.1226(c) and (f), a county only has the power to obtain a copy of the CMH authority's reports and approve the county portion of the authority's budget. While Huron County appointed all of petitioner's board members, only 4 of the 12 members could be county commissioners, and once on the board, the members owe a duty to petitioner and may only be removed for cause after a hearing. MCL 330.1222(1) and (2); MCL 330.1224; MCL 330.1226. Thus, the circuit court did not err by concluding that Huron County did not have the ability to control or significantly influence petitioner. The lease agreement between petitioner and Huron County was an arm's-length transaction, and petitioner was entitled to reimbursement for the rent it paid to Huron County.

Affirmed.

1. ADMINISTRATIVE LAW — CIRCUIT COURTS — REVIEW OF AGENCY DECISIONS — EQUITY.

Administrative tribunals do not have equitable jurisdiction unless expressly authorized by statute; a court may not set aside an administrative decision on equitable grounds (MCL 24.306).

2. ADMINISTRATIVE LAW — COMMUNITY MENTAL HEALTH AUTHORITIES — DEPARTMENT OF COMMUNITY HEALTH — REIMBURSEMENT FOR RENT — ARM'S-LENGTH TRANSACTIONS.

A community mental health (CMH) authority is a largely autonomous public governmental entity separate from the county or counties that establish it and run independently of those counties; a county does not have the ability to control or significantly

influence a CMH authority, so a lease entered into between a county and a CMH authority is an arm's-length transaction, and the authority is entitled to reimbursement from the Department of Community Health for rent paid under the agreement.

*Janis Meija, Jr. & Associates, P.C.* (by *Janis Meija, Jr.*), for Huron Behavioral Health.

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *Darrin F. Fowler,* Assistant Attorney General, and *Nan Elizabeth Casey,* Special Assistant Attorney General, for the Department of Community Health.

Before: SAAD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM. Respondent, the Michigan Department of Community Health (DCH), appeals by delayed leave granted the circuit court's order reversing an administrative decision. *Huron Behavioral Health v Dep't of Community Health,* unpublished order of the Court of Appeals, entered April 12, 2010 (Docket No. 295740). Because we conclude that Huron County and petitioner, Huron Behavioral Health, were engaged in an arm's-length transaction and that petitioner was entitled to reimbursement from respondent for rental expenses, we affirm the circuit court's order.

I. BASIC FACTS AND PROCEDURAL BACKGROUND

Petitioner is a community mental health (CMH) authority that receives state, county, and federal funds to provide mental-health services to residents of Huron County. Respondent is a state agency that oversees and funds health-related services in the state of Michigan. In particular, it is respondent that receives federal Medicaid money and disburses that money to health-care providers throughout the state, including peti-

tioner. Petitioner and respondent entered into a service contract by which petitioner agreed to provide mental-health services to residents of Huron County in exchange for reimbursement from the state. The contract required petitioner to document costs and comply with Office of Management and Budget (OMB) Circular A-87.

Before 1996, petitioner was an agency under the control of Huron County and was charged with providing mental-health services to residents in Huron County. In 1996, petitioner continued providing mental-health services in Huron County, but became a CMH authority separate from the county. Since its creation in 1971, petitioner has been housed in a Huron County building and has been paying rent to the county.

From 1999 to 2006, in connection with its state and federal funding, petitioner provided annual budgets to respondent, which included the cost of rent paid to the county for that period. In 2008, respondent audited those budgets and determined that, because the relationship between petitioner and Huron County was not arm's-length, petitioner should not have made rental payments to the county and had not been entitled to reimbursements from respondent for that rent. Respondent relied on the provision in its contract with petitioner mandating compliance with OMB Circular A-87. OMB Circular A-87 states that Medicaid funds may not be used by a provider to pay rent to a governmental unit if the provider and the governmental unit are engaged in a less-than-arm's-length transaction. Respondent's auditor concluded that Huron County and petitioner were engaged in a less-than-arm's-length transaction because the county had the ability to control petitioner through the Huron County Board of Commissioners' appointment of petitioner's

board, removal of petitioner's board members at will, ability to dissolve petitioner, and provision of annual appropriations to petitioner. Respondent demanded that petitioner reimburse it in the amount of $612,985 for the rent paid.

Petitioner sought a review hearing of the audit, raising four issues: whether the federal Medicaid funding petitioner received is a "federal grant/award"; whether OMB Circular A-87 is applicable to contracts between petitioner and respondent; whether respondent properly determined that cost settlement is applicable to a determination of allowable costs; and whether respondent properly determined that petitioner and Huron County were "related parties" so that their lease agreement was "less than arms length." The hearing referee found against petitioner on each issue, and the DCH entered a final order that in large part adopted the referee's findings.

Petitioner appealed the final order adopting the referee's findings in the circuit court. Petitioner argued that OMB Circular A-87 did not apply to its contract with respondent, that cost settlement was not allowed, and that petitioner and the county did not have a less-than-arm's-length relationship. The circuit court reversed the administrative decision, citing two issues it was "troubled with." First, the circuit court found that petitioner was entitled to equitable relief because it had detrimentally relied on respondent's approval of petitioner's budget for many years. Second, the circuit court disagreed with the conclusion that this was not an arm's-length transaction. The circuit court reasoned that the Legislature has stated that the county and the CMH authority are separate legal entities. The circuit court also found that Huron County did not have control over petitioner. Being able to establish petition-

er's board was not enough for control, and the statutes restricted the county's choices of who made up the board. The circuit court read the language of MCL 330.1224 as permitting removal from the board for cause only, not at will. Thus, the circuit court concluded there was no improper self-dealing and the lease contracts were appropriate expenditures. Respondent now appeals by leave granted the circuit court's order.

## II. STANDARD OF REVIEW

We review for clear error a circuit court's ruling concerning an agency's decision. *Glennon v State Employees' Retirement Bd*, 259 Mich App 476, 478; 674 NW2d 728 (2003). A decision is clearly erroneous when this Court is left with "the definite and firm conviction" that a mistake was made. *Id*.

The circuit court's review of an agency's decision is controlled by the Administrative Procedures Act (APA), MCL 24.201 *et seq*., which provides:

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> (a) In violation of the constitution or a statute.
>
> (b) In excess of the statutory authority or jurisdiction of the agency.
>
> (c) Made upon unlawful procedure resulting in material prejudice to a party.
>
> (d) Not supported by competent, material and substantial evidence on the whole record.
>
> (e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.
>
> (f) Affected by other substantial and material error of law.

(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings. [MCL 24.306.]

"When reviewing whether an agency's decision was supported by competent, material, and substantial evidence on the whole record, a court must review the entire record and not just the portions supporting an agency's findings." *Great Lakes Sales, Inc v State Tax Comm*, 194 Mich App 271, 280; 486 NW2d 367 (1992). Substantial evidence is what "a reasoning mind would accept as sufficient to support a conclusion." *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002). Substantial evidence is "more than a mere scintilla" but less than "a preponderance" of evidence. *Mantei v Mich Pub Sch Employees Retirement Sys*, 256 Mich App 64, 71; 663 NW2d 486 (2003). A reviewing court must not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result. *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005). Deference must be given to an agency's findings of fact, *id.* at 588, especially with respect to conflicts in the evidence, *Arndt v Dep't of Licensing & Regulation*, 147 Mich App 97, 101; 383 NW2d 136 (1985), and the credibility of witnesses, *VanZandt*, 266 Mich App at 588. Similarly, great deference should be given to an agency's administrative expertise. *VanZandt*, 266 Mich App at 588. At the same time, an issue of statutory interpretation is a question of law that we consider de novo on appeal. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

### III. EQUITABLE REMEDY

The circuit court erred to the extent that it applied equity to reverse the administrative decision. Adminis-

trative tribunals do "not have equitable jurisdiction" unless expressly authorized by statute. *Benton Harbor Area Sch Bd of Ed v Wolff*, 139 Mich App 148, 156; 361 NW2d 750 (1984). Moreover, nothing in the APA permits a court to set aside an administrative decision it finds inequitable. See MCL 24.306. However, as discussed in part IV of this opinion, the administrative decision was based on a flawed construction of the relevant statutes, so any error by the circuit court on this issue was harmless.

### IV. ARM'S-LENGTH TRANSACTION

The circuit court did not err by concluding that petitioner and the county had an arm's-length relationship. Given the language and the historical development of the statutes governing CMH authorities and respondent's concession that Huron County did not actually attempt to control petitioner, they were engaged in an arm's-length transaction and petitioner was entitled to reimbursement for rent paid to Huron County.

"[The] primary goal when interpreting a statute is to ascertain and give effect to the intent of the Legislature," as gathered from the ordinary meaning of the language used. *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 131; 807 NW2d 866 (2011). "The Legislature is presumed to have intended the meaning that it plainly expressed, and clear statutory language must be enforced as written." *Id.* at 131-132 (citation omitted). The changes in an act must be construed in light of the act's predecessor statutes and the law's historical development. See *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 120; 667 NW2d 880 (2003).

The state began auditing the CMH authorities and mandating that OMB Circular A-87 be incorporated into their contracts. Section 37(c) of Attachment B of OMB Circular A-87 provides as follows:[1]

> Rental costs under "less-than-arms-length" leases are allowable only up to the amount (as explained in Attachment B, section 37.b) that would be allowed had title to the property vested in the governmental unit. For this purpose, *a less-than-arms-length lease is one under which one party to the lease agreement is able to control or substantially influence the actions of the other.* Such leases include, but are not limited to those between (i) divisions of a governmental unit; (ii) governmental units under common control through common officers, directors, or members; and (iii) a governmental unit and a director, trustee, officer, or key employee of the governmental unit or his immediate family, either directly or through corporations, trusts, or similar arrangements in which they hold a controlling interest. For example, a governmental unit may establish a separate corporation for the sole purpose of owning property and leasing it back to the governmental unit. [Emphasis added.]

We conclude that under the relevant statutory scheme, and given its historical development, the county did not have the ability to control or substantially influence petitioner, and the circuit court did not err in concluding that an arm's-length transaction existed between the county and petitioner.

### A. STATUTORY HISTORY

This Court described the historical development of the relevant statutory scheme in *Mason Co v Dep't of Community Health*, 293 Mich App 462; 820 NW2d 192 (2011). This Court stated in relevant part:

---

[1] This version became effective June 9, 2004.

The Michigan Constitution requires the Legislature to pass "suitable laws for the protection and promotion of the public health." Const 1963, art 4, § 51. Through that grant of power, the Legislature codified the Mental Health Code. Section 116(e) of 1974 PA 258 directed that the Department of Mental Health (DMH) [the agency that preceded the DCH] do the following:

"(i) It shall administer the provisions of chapter 2 so as to promote and maintain an adequate and appropriate system of county community mental health services throughout the state.

"(ii) In the administration of chapter 2, it shall be the objective of the department to shift from the state to a county the primary responsibility for the direct delivery of public mental health services whenever such county shall have demonstrated a willingness and capacity to provide an adequate and appropriate system of mental health services for the citizens of such county."

In 1995, the Legislature amended the Mental Health Code. 1995 PA 290. At that time, the Legislature assigned DCH responsibility for providing mental health services to residents of the state of Michigan. See MCL 330.1116(1) and (2)(a). However, in MCL 330.1116(2)(b), the Legislature directed DCH

"to shift primary responsibility for the direct delivery of public mental health services from the state to a community mental health services program [CMHSP] whenever the [CMHSP] has demonstrated a willingness and capacity to provide an adequate and appropriate system of mental health services for the citizens of that service area"

in accordance with chapter 2 of the Mental Health Code, MCL 330.1200 *et seq.*

In sum, according to the language of the statutes, the goal as of 1974 was to shift responsibility for mental health services from the state to the counties, whereas in 1995 the goal became to shift the state's responsibility to CMHSPs. In other words, the state has always retained primary responsibility for mental health services, but the objective

since 1974 has been to shift responsibility to localities and, in 1995, the local entity changed from counties to CMHSPs.

When the Mental Health Code was enacted in 1974, counties delivered mental health services through "county community mental health programs." 1974 PA 258, § 200 *et seq.* These entities should not be confused with CMHSPs, which came into being under 1995 PA 290 and will be further discussed later in this opinion. . . . Section 204 provided that a county community mental health program would be "an official county agency." 1974 PA 258, § 204. . . .

With regard to the CMHSPs created under 1995 PA 290, § 204(1) of the act, MCL 330.1204(1), provides as follows:

"A community mental health services program established under this chapter shall be a county community mental health agency, a community mental health organization, or a community mental health authority. A county community mental health agency is an official county agency. A community mental health organization or *a community mental health authority is a public governmental entity separate from the county or counties that establish it.*" [*Mason Co*, 293 Mich App at 473-476.]

Accordingly, CMH authorities are largely autonomous and run independently of the counties. Huron County did not have the ability to control or substantially influence petitioner.

### B. MERITS

As previously noted, MCL 330.1204 provides that a CMH authority such as petitioner is "a public governmental entity separate from the county or counties that establish it." MCL 330.1204(1). Its board sets its policies and procedures. MCL 330.1204(2). Petitioner has numerous powers, including the power to, in its own name, enter into contracts, employ staff, lease real estate, operate buildings, incur debts, and engage in

litigation. MCL 330.1205(4)(f). Further, it can purchase real or tangible personal property, MCL 330.1205(10), and is "responsible for all executive administration, personnel administration, finance, accounting, and management information system functions," MCL 330.1205(5)(b). Huron County, as an entity distinct from the CMH authority, is "not liable for any intentional, negligent, or grossly negligent act or omission, for any financial affairs, or for any obligation of a [CMH] authority, its board, employees, representatives, or agents . . . ." MCL 330.1205(6). Moreover, a CMH authority employee is not a county employee. MCL 330.1205(8).

Pursuant to the act, the board of the CMH authority is tasked with the day-to-day management of the CMH authority. MCL 330.1226. A county only has the power to obtain a copy of the CMH authority's reports and to approve the *county* portion of the CMH authority's budget. MCL 330.1226(c) and (f). A county is generally not otherwise involved in managing the CMH authority with one exception. MCL 330.1226a allows a CMHSP board to create a special fund account to receive fees and third-party reimbursements, but only with approval of the board of county commissioners. Still, reports regarding those special funds are sent to the DCH and not to the county. *Id.*

Huron County appoints all members of the petitioner's board. No more than 4 of the 12 board members, however, can be county commissioners, less than a majority. MCL 330.1222(2). Petitioner's board must "be representative of providers of mental health services, recipients or primary consumers of mental health services, agencies and occupations having a working involvement with mental health services, and the general public." MCL 330.1222(1). Moreover, once appointed by

Huron County, board members owe a duty to petitioner. See MCL 330.1226. Because only four county commissioners may be appointed by Huron County to petitioner's board and all board members owe an independent duty and ethical obligation to act in the best interests of petitioner, the county does not have the ability to control or substantially influence petitioner.

Respondent previously asserted before the circuit court that the county can dismiss petitioner's board members at will and that authority gives the county the ability to control or substantially influence petitioner. We disagree. The relevant sentence of the statute reads as follows:

> A board member may be removed from office by the appointing board of commissioners or, if the board member was appointed by the chief executive officer of a county or a city under [MCL 330.1216], by the chief executive officer who appointed the member for *neglect of official duty or misconduct in office* after being given a written statement of reasons and an opportunity to be heard on the removal. [MCL 330.1224 (emphasis added).]

Respondent argues that the clause set off by commas severs the beginning of the sentence from the "for cause" qualifier that follows. This argument is without merit because it leaves the conjunction "or" hanging without an explanation. As this Court noted in *Mason Co*, 293 Mich App at 484:

> [T]he clause cited is an essential interrupting dependent clause that must be set off by commas. It interrupts the flow of the sentence to explain that the power of a chief executive officer (CEO) to remove a board member exists only when the CEO has appointed the member pursuant to MCL 330.1216. Thus, the sentence identifies two authorities with the power of removal, "the appointing board of commissioners" and the appointing CEO, and then, following the interrupting clause, identifies the grounds for

which each authority may remove the member—"for neglect of official duty or misconduct in office after being given a written statement of reasons and an opportunity to be heard on the removal." Thus, whichever authority is involved, board members may only be removed for cause and after a hearing.

The county also does not have the ability to control or substantially influence through its power to dissolve petitioner. A CMH authority may dissolve itself or be dissolved by the county board of commissioners. MCL 330.1205(2)(b); MCL 330.1220. If it were to be dissolved, however, the county's community mental-health program would no longer be protected by the "capping" provision of MCL 330.1308(2)(a), and the county's share of costs would increase back to 10 percent of the net costs. See *Mason Co*, 293 Mich App at 485 n 6.

In reality, respondent has more control over petitioner than Huron County. Although, as noted, the CMH authority must provide a copy of its annual audit to the county and get county approval for county-provided funds, it is the state's duty to review the CMH authority's annual needs assessment, plan, and budget and to approve or disapprove state funding. MCL 330.1205(5); MCL 330.1226(1)(a), (c), (d), and (f); MCL 330.1232. In fact, because petitioner receives state funds and because "[e]ligibility for state financial support shall be contingent upon an approved contract and operating budget and certification in accordance with [MCL 330.1232a]," MCL 330.1232, petitioner is entirely dependent on respondent's approval of its budget, service plan, and performance. In contrast, a county agency's annual needs assessment, plan, and budget are approved by the county. MCL 330.1226(1)(c). While a county agency and a CMH authority both appoint their own executive directors, a county agency's appointment can be rejected by a ⅔ vote of the county board of

commissioners. MCL 330.1226(1)(k) and (3). It is difficult to see how Huron County could influence or control petitioner in any significant way that would not impinge on respondent's area of control.

Respondent further argues that the circuit court erred by failing to defer to the administrative agency's reading of the statute. Generally, " 'the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.' " *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008), quoting *Boyer-Campbell Co v Fry*, 271 Mich 282, 296-297; 260 NW 165 (1935). "However, the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Rovas Complaint*, 482 Mich at 103. Because we conclude that the Legislature's intent as expressed in the statute did not grant the county the ability to control petitioner, we reject respondent's argument.

The trial court did not err by concluding that Huron County was not able to control or significantly influence petitioner and that the lease was an arm's-length transaction.

Affirmed.

SAAD, P.J., and JANSEN and K. F. KELLY, JJ., concurred.