# STATE OF MICHIGAN

# COURT OF APPEALS

KARI E. YONKERS,

        Petitioner-Appellee,

v

MICHIGAN COMMISSION ON LAW
ENFORCEMENT STANDARDS,

        Respondent-Appellant.

UNPUBLISHED
November 10, 2015

No. 322462
Ingham Circuit Court
LC No. 13-000735-AA

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In this dispute over a surviving spouse's eligibility for a death benefit, respondent, Michigan Commission on Law Enforcement Standards (the Commission), appeals by leave granted the circuit court's opinion and order reversing the Commission's determination that petitioner, Kari E. Yonkers, was not entitled to the death benefit provided under the public safety officers benefit act, MCL 28.631 *et seq.* (Officers Benefit Act), because her husband, Barry County Sherriff's Deputy Christopher Yonkers, did not die in the line of duty. There was record evidence to support the Commission's finding that Christopher Yonkers was not acting in the line of duty at the time of his death. Therefore, the circuit court erred when it reviewed the evidence de novo and substituted its own judgment for the Commission's judgment on that issue. Nevertheless, we must remand this case because the Commission's decision did not comply with MCL 24.285. Accordingly, we vacate the circuit court's opinion and order, and remand this matter to the Commission for further proceedings.

## I. BASIC FACTS

In October 2008, Christopher Yonkers was driving his motorcycle on M-43 approximately 4 miles west of the intersection with Usborne Road in Barry County. Shortly before ten at night, he struck another car and was killed. Christopher's wife, Kari Yonkers, sought the death benefit provided under the Officers Benefit Act, see MCL 28.634(1), which the Commission administers, see MCL 28.632(a) and MCL 28.633.

The Commission investigated the accident, determined that Christopher Yonkers did not die in the line of duty, and denied the claim. Kari Yonkers requested a hearing on the issue. After the hearing, the administrative law judge concluded that Christopher Yonkers died in the line of duty and issued a proposal for decision recommending that the benefit be paid. The

-1-

Commission rejected the proposal for decision, and issued a final order denying Kari Yonkers' claim. She then appealed to the circuit court, and the circuit court reversed the Commission's decision and ordered it to pay the benefit.

There is no dispute that Christopher Yonkers was not acting in the line of duty shortly before the accident. He spent most of the day, until about 9:00 p.m., in a motel room with Tina Fein with whom he was having an extramarital affair. Nevertheless, Kari Yonkers argued that the evidence showed that, after he left the motel, her husband was conducting investigative activities or was on his way to the Hastings police station to fill out a work-related form. She relied on circumstantial evidence regarding her husband's work habits and his statement to his daughter earlier that day about his plans for the evening. The Commission determined that Kari Yonkers failed to establish by a preponderance of the evidence that her husband died in the line of duty; it opined that her view of the evidence was speculative.

## II. THE AGENCY'S DECISION

### A. STANDARD OF REVIEW

The Commission argues that the circuit court erred when it reversed the Commission's decision. Specifically, it argues that, instead of conducting the limited review required under the law, the circuit court in effect reviewed the evidence de novo and substituted its own view of the evidence for the Commission's view. This Court reviews a circuit court's ruling on an administrative appeal to determine whether the circuit court "applied the correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 152; 725 NW2d 56 (2006) (quotation marks and citations removed).

### B. ANALYSIS

The circuit court did not have the authority to review the Commission's decision de novo; its authority was " 'limited to determining whether the [Commission's] decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law.' " *Dept of Labor and Economic Growth, Unemployment Ins Agency v Dykstra*, 283 Mich App 212, 223; 771 NW2d 423 (2009) (citation omitted); see also Const 1963, art 6, § 28. An administrative decision is not authorized by law if it is in violation of a statute or the constitution, in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or arbitrary and capricious. *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 488-489, 586 NW2d 563 (1998). This standard is "almost identical" to the standard set forth in the Administrative Procedures Act, MCL 24.201 *et seq. Id.* at 489.

Substantial evidence means the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion; it is more than a mere scintilla but less than a preponderance of evidence. *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 497; 813 NW2d 763 (2011). The circuit court must defer to an agency's findings of fact, especially as to conflicts in the evidence and the credibility of witnesses. *Id*. "A reviewing

court must not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result." *Id.* Accordingly, "[a] court will not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *In re Payne*, 444 Mich 670, 692; 514 NW2d 121 (1994) (opinion by Boyle, J.). As our Supreme Court has explained: "[T]he reviewing court does not conduct a new evidentiary hearing and reach its own factual conclusions, nor does the reviewing court subject the evidence to review de novo." *In re Complaint of Rovas*, 482 Mich 90, 101; 754 NW2d 259 (2008).

Here, it is evident that the circuit court reviewed the evidence de novo and substituted its own view of the evidence for that of the Commission. As an initial matter, the parties agreed that Kari Yonkers had the burden of proving by a preponderance of the evidence that her husband was acting in the line of duty when he died. However, the circuit court appeared to reassign the burden to the Commission, stating that "there is virtually no circumstantial evidence to indicate that Mr. Yonkers was *not* acting in the line of duty at the time he was killed." (Emphasis in original).

Contrary to the circuit court's conclusion, there was circumstantial evidence that Christopher Yonkers was not acting in the line of duty when he died. The circuit court stated: "The only evidence on the record that would arguably support such a conclusion is the fact that no one can say with certainty that Mr. Yonkers was in the line of duty at the time of his death and that he could have been going home." In fact, Fein told Sergeant Terry Klotz that she and Christopher Yonkers talked all day about how they would tell their spouses that they wanted divorces and that they both intended to go home to do so. She also said that she wished that they would have stopped at the park-and-ride lot near the M-43 and M-66 junction, but Christopher Yonkers was in a hurry to get home. Kari Yonkers testified that she would have finished her evening activities at around 9:00 or 9:15 p.m., and then would have gone directly home. So she would have been home around the same time that her husband would have arrived. And the route that Christopher Yonkers was driving at the time of the accident was consistent with the evidence that he was heading home. Thus, there was circumstantial evidence to support a finding that Christopher Yonkers was driving home at the time of the crash.

The circuit court also improperly premised its conclusion in part on a timeline that it constructed and which is speculative and arguably not supported by the evidence. The court explained that it believed there was a time gap: "All of this testimony is consistent with the fact that although the accident took place only eight miles from where Mr. Yonkers was last seen, the time that elapsed was 45 minutes." Because the accident occurred at 9:47 p.m., which was forty-five minutes after Christopher Yonkers left Fein, but only eight miles away from where he left her at the M-66 interchange, the circuit court found that Christopher Yonkers must have taken a detour to investigate a suspect's house.

The record evidence shows that Christopher Yonkers and Fein parted company at around 9:00 p.m. The circuit court interpreted this evidence to mean that it was 9:00 when Fein turned off M-43 and onto M-66 south. But the evidence that they parted company around 9:00 more likely suggests that they were just leaving the motel in Lansing, not that they were at the M-66 and M-43 junction. Fein told Klotz that, after she heard about the accident, she suspected that Yonkers was involved on the basis of "the fact she *had just left* [him] on his motorcycle." (Emphasis added). If the accident had occurred 45 minutes after they parted ways at the M-66

and M-43 junction, the timing of the accident would not have caused her to believe that Christopher Yonkers was involved. She would have traveled 45 minutes away from the area and would not have been able to arrive at the scene of the accident as quickly as she did. Indeed, the administrative law judge observed that Fein's testimony "actually supports Deputy Yonkers, *leaving the Lansing area* and heading west *sometime after 9:00 pm.*, October 17, 2008." (Emphasis added). The administrative law judge did not construct a precise timeline and the timing was otherwise not the focus of the judge's analysis. Accordingly, the circuit court had to make its own findings in order to reach the conclusion that it did.

Although the evidence arguably supported a finding that Christopher Yonkers was acting in the line of duty at the time of his death, there was also competent, material, and substantial evidence on the whole record to support the Commission's finding that he was not acting in the line of duty. See *Dykstra*, 283 Mich App at 223. The Commission's report indicates that it found Klotz's interview with Fein to be most significant. For the reasons discussed, Fein's testimony supports an inference that Yonkers was on his way home when the crash occurred. Also, there was no evidence that Christopher Yonkers had picked up trash from a suspect's house before the crash, which occurred west of the suspect's address. Anything that he picked up would have been on him when he crashed. There was testimony from another officer that pulling trash would be hard to do on a motorcycle, and dangerous in the area of the suspect's address. Although there was evidence that "pulling trash" also means to drive by and see what night is garbage night for a suspect, Christopher Yonkers had already been advised that Friday night was trash night at the suspect's address, so there would have been no need for him to drive by for that purpose.

To the extent that Christopher Yonkers' statements to his daughter and wife regarding his plans for the evening might be weighed against his statements to Fein regarding his intent, his statements to Fein occurred closer in time to his death. Therefore, they might reasonably be given greater weight in deducing his true intentions. And perhaps more importantly, it was undisputed that he was deceiving his wife about the affair. That fact casts doubt on whether he was being honest with his wife and daughter when he said he would be working that night. Christopher Yonkers' statements to Fein about his intended actions that night arguably would be more reliable than his statements to family members, from whom he was trying to conceal the affair. He also lied to Trooper Phillip McNabnay about his work activities that day. McNabnay testified that Christopher Yonkers left him a voicemail around 4:00 p.m. stating that he was "running errands." McNabnay stated that "running errands" means police work. But at the time he sent the voicemail, Yonkers was in a motel room with Fein.

The circuit court was required to accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views. *In re Payne*, 444 Mich at 692. It failed to do so. Because the circuit court erred by making its own findings of fact, we vacate its opinion and order.

The circuit court also concluded that respondent's decision was not authorized by law because it was contrary to Mich Admin Code, R 28.14954(1), which requires the resolution of "any reasonable doubt arising from the circumstances of the officer's death . . . in favor of payment of the death [] benefit." The circuit court was acting as an appellate court, and lacked authority to weigh the evidence and decide whether it created reasonable doubt. That authority

was reserved for the factfinder—the Commission—and under the circumstances of this case the Commission could very well have concluded that the evidence did not create a reasonable doubt as to whether Christopher Yonkers died in the line of duty. Consequently, the circuit court erred in concluding that the weight of the evidence created a reasonable doubt that warranted invoking the evidentiary presumption in favor of awarding benefits.

The circuit court also concluded that the Commission's final decision and order did not comply with MCL 24.285 because the Commission did not provide any analysis or specific facts supporting its decision. Under MCL 24.285, the Commission had to state its final decision in writing or on the record and had to include "findings of fact and conclusions of law" under separate headings. Its findings had to be "based exclusively on the evidence and on matters officially noticed" and "if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting them." *Id.*

The "findings of fact" portion of the Commission's final decision consisted of only one sentence: "Christopher Yonkers' death was not sustained in the line of duty." This finding mirrors the statutory language, and, therefore, it had to "be accompanied by a concise and explicit statement of the underlying facts supporting [the finding]." MCL 24.285. However, the Commission did not direct the reader to the facts that it relied on to support its decision. The reader is left to speculate as to why the Commission rejected administrative law judge's decision and reached the opposite conclusion. The lack of analysis also leaves the reader to wonder whether the Commission ignored or overlooked R 28.14954(1), or found that it was inapplicable because the evidence did not create a reasonable doubt as to whether Christopher Yonkers died in the line of duty. Under these circumstances, we conclude that the Commission's decision did not comply with the statutory requirements of MCL 24.285, and was therefore "in violation of a statute." *Northwestern Nat'l Cas Co*, 231 Mich App at 488-89.

## III. CONCLUSION

For the reasons discussed, we vacate the circuit court's opinion and order reversing the Commission's decision and remand this case to the Commission for further proceedings. On remand, the Commission shall amend its decision to comply with MCL 24.285. Further, the Commission shall address R 28.14954(1), and state how it applied that regulation to the facts of this case. On remand, we do not preclude the Commission from reconsidering its decision if, after considering the proper application of R 28.14954(1), it determines in its discretion that it is appropriate to do so.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly