*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HYLAND ASSISTED LIVING & MEMORY
CARE, LLC,

UNPUBLISHED
October 29, 2019

Plaintiff-Appellee,

v

No. 340927
Dickinson Circuit Court
LC No. 17-019040-AA

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Defendant-Appellant.

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Michigan Department of Health and Human Services (DHHS), appeals by leave granted[1] the circuit court's order reversing its final order adopting the decision of the Administrative Law Judge (ALJ), which concluded that DHHS could tax plaintiff, Hyland Assisted Living & Memory Care, LLC (Hyland), under the Quality Assurance Assessment Program (QAAP), MCL 333.20161,[2] for the time period after plaintiff had voluntarily relinquished its nursing home provider license. The circuit court reversed the ALJ's decision upon finding that DHHS's assessment of the provider tax was arbitrary, capricious, and unsupported by the evidence. Because the circuit court clearly erred in its review of the ALJ decision, and because the decision of the ALJ was supported by competent, material, and

---

[1] *Hyland Assisted Living & Memory Care, LLC v Dep't of Health and Human Servs*, unpublished order of the Court of Appeals, entered July 18, 2018 (Docket No. 340927).

[2] The version of the statute applicable to this appeal is the version in effect at the time plaintiff's attempted nursing home closure in November 2015. See 2015 PA 105, effective October 1, 2015 to June 20, 2016. However, we note that MCL 333.20161 has since been amended by 2016 PA 189, effective June 21, 2016, and 2018 PA 245, effective June 28, 2018.

substantial evidence, we reverse the decision of the circuit court and reinstate the decision of the ALJ.

Hyland operated as nursing home and maintained a license issued by the Michigan Department of Licensing and Regulatory Affairs (LARA) to operate a nursing home. Fees are assessed on nursing home providers on an annual basis under the QAAP. In the summer of 2015, Hyland decided that its nursing home revenue could no longer meet its expenses, and decided to become an assisted living center, which would not require a license and would thereby be exempt from a QAAP provider fee. In November 2015, Hyland's administrator, Christine Redding, surrendered its nursing home license after informing its patients and the Gaylord office of LARA of its closure. However, instead of closing its doors and discharging all of its residents, Hyland maintained eight of its nursing home patients and applied for a Home for the Aged (HFA) license. LARA personnel advised Hyland that it should keep its nursing home license until it was approved as a HFA. Hyland's administrator declined to do so because maintaining the license would subject Hyland to the QAAP provider tax. Ultimately, LARA declined to accept the relinquishment of Hyland's nursing home license and, as required by statute, DHHS continued to tax Hyland. Hyland requested an administrative hearing. The ALJ concluded that DHHS properly assessed the tax because Hyland had failed to have an approved plan prior to closure and returning the hard copy license alone did not effectuate a relinquishment. Moreover, the ALJ noted that communications between Hyland's administrator and LARA showed that the relinquishment was not accepted. The ALJ's decision was subsequently adopted as DHHS's final order.

Hyland appealed to the circuit court, arguing that the ALJ's conclusions and findings were not based on substantial, competent, and material evidence. The trial court agreed, reversing the order after concluding that Redding and Hyland "were trying to do the right thing here and did not really receive the type of assistance they needed to comply with . . . what was required of them to close this nursing home." DHHS then filed an application for leave to appeal, which this Court granted.

On appeal, DHHS first argues that the circuit court failed to review the ALJ's decision under the appropriate standard. Specifically, DHHS contends that the circuit court could not reverse the ALJ on the basis of a credibility assessment, and that the circuit court could not substitute its judgment for that of the ALJ. We agree.

This Court reviews a lower court's review of an agency decision to determine whether the lower court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Wescott v Civil Serv Comm*, 298 Mich App 158, 161; 825 NW2d 674 (2012) (quotation marks and citation omitted). This constitutes a clearly erroneous standard of review. *Nason v State Employees' Ret Sys*, 290 Mich App 416, 424; 801 NW2d 889 (2010). "A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). Whether the lower court applied the correct standard of review is a question of law that is reviewed de novo. *NDRC v Dep't of Environmental Quality*, 300 Mich App 79, 87; 832 NW2d 288 (2013).

The record in this case contains conflicting evidence regarding whether LARA officially accepted Hyland's attempt to relinquish its nursing home license. The documentary evidence indicates that, in October and November of 2015, LARA representative Ann Kosloski informed Redding that Hyland's closure would be complete once Hyland returned the hard copy of Hyland's nursing home license to LARA. However, Kosloski was promptly corrected by another LARA staff member, and Kosloski then advised Redding to keep her license until she was approved for a HFA license. Additionally, LARA Director Larry Horvath testified that, during a January 2016 conference call, he advised Redding that LARA had not accepted the license relinquishment. Redding denied that Horvath ever said that LARA had refused the relinquishment.

Given the conflicting evidence, the ALJ was required to determine whether LARA had, in fact, refused to allow Hyland to relinquish its license. The ALJ found that LARA had never recognized Hyland's attempt to surrender its nursing home license and that the license remained in effect through its expiration in July 2016. The circuit court rejected the ALJ's findings and instead found:

> On November 19, 2015, [Hyland] closed as a nursing home and ceased to exist as a licensed nursing facility. [Hyland] closed its doors as of November 19, 2015. It mailed its licenses [sic plural] on November 24, 2015, to the State when requested to do so, as part of its cessation and termination of operations as a licensed nursing home in Michigan.

The circuit court, in rejecting the ALJ's finding, apparently determined that Redding's testimony was more credible. However, a reviewing court may not resolve conflicts in the evidence or pass on the credibility of witnesses, especially if the agency decision is based on a credibility determination. *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). Rather, it is the administrative fact-finder's responsibility to determine whether evidence and testimony are persuasive and credible. *VanZandt*, 266 Mich App at 593. A credibility assessment by the circuit court constitutes error. *Id*. at 588.

The circuit court clearly erred in its review of the ALJ's decision by disregarding the ALJ's factual findings and instead making its own credibility determinations. Its decision was also clearly erroneous given that, in failing to review the ALJ's decision under the correct standard, the circuit court applied incorrect legal principles. See *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 572, 578; 659 NW2d 629 (2002).

Additionally, the circuit court's decision was based, in large part, on its conclusion that the state agency failed to provide Redding and Hyland sufficient guidance. In other words, the circuit court concluded that it was not fair and equitable under the circumstances to penalize Hyland for the agencies' failure to provide additional guidance. However, a reviewing court may not "set aside an administrative decision it finds inequitable." *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 498; 813 NW2d 763 (2011).

DHHS next asserts that, contrary to the circuit court's finding, the ALJ decision was supported by competent, material, and substantial evidence and was not arbitrary or capricious. We agree.

A final agency decision must generally be upheld by the reviewing court "if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record." *VanZandt*, 266 Mich App at 583-584, citing Const 1963, art 6, § 28; MCL 24.306(1)(d). "[A]n agency's decision that is in violation of statute . . . , in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or . . . arbitrary and capricious, is a decision that is *not* authorized by law and must be set aside." *City of Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 64; 678 NW2d 444 (2003) (quotation marks and citations omitted; alteration in original). "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott*, 298 Mich App at 162.

Evidence is substantial if a reasonable mind would accept it as "sufficient to support a conclusion." *Dep't of Community Health v Risch*, 274 Mich App at 372. Substantial evidence requires "more than a scintilla of evidence," but "may be substantially less than a preponderance." *Id*. "Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views." *City of Romulus*, 260 Mich App at 63 (quotation marks and citation omitted).

DHHS contends that by retaining eight of its nursing home patients, Hyland was continuing to operate as a licensed nursing home and was required by LARA to retain its license such that the circuit court erred as a matter of law by concluding that Hyland's return of the hard copy of its license was sufficient to avoid any future QAAP tax. Hyland responds that the circuit court correctly determined that the Department's decision was arbitrary on the ground that there was no legal justification to assess the QAAP tax once Hyland had relinquished its license. Nothing within the circuit court's oral opinion or the written order reflects that the circuit court properly considered whether the ALJ committed an error of law or whether the ALJ's decision was supported by competent, material, and substantial evidence. *VanZandt*, 266 Mich App at 583. Moreover, Hyland's position is unavailing because the circuit court erred by failing to apply the laws that control nursing home licensing and closures.

The circuit court, as well as the ALJ, appeared to rely on the Department's Bulletin as the definitive statement of nursing home closure pertaining to the QAAP tax. The Bulletin, however, appears to provide departmental guidance or interpretive rules, rather than binding requirements. Agency interpretive rules do not carry sanctions and are not necessarily enforceable against regulated entities. *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 241; 501 NW2d 88 (1993).

The Bulletin indicates that it reflects an update to the Michigan Medicaid provider manual to coincide with "an update to the Code of Federal Regulations at 42 CFR 483.12(a)(8), 42 CFR 483.75(r), and 42 CFR 483.75(s)." Accordingly, a nursing home closure is governed by

the cited federal regulations in effect in 2015,[3] and any corollary state laws and regulations, rather than by LARA's acquiescence to a closure. The cited federal regulations required nursing home administrators to provide patients with a state-approved plan for the transfer of residents:

> (r) Facility closure-Administrator. Any individual who is the administrator of the facility must:
>
> (1) Submit to the State Survey Agency, the State LTC ombudsman, residents of the facility, and the legal representatives of such residents or other responsible parties, written notice of an impending closure:
>
> (i) At least 60 days prior to the date of closure . . .
>
> \* \* \*
>
> (3) Include in the notice the plan, that has been approved by the State, for the transfer and adequate relocation of the residents of the facility by a date that would be specified by the State prior to closure, including assurances that the residents would be transferred to the most appropriate facility or other setting in terms of quality, services, and location, taking into consideration the needs, choice, and best interests of each resident.
>
> (s) Facility closure. The facility must have in place policies and procedures to ensure that the administrator's duties and responsibilities involve providing the appropriate notices in the event of a facility closure, as required at paragraph (r) of this section. [Former 42 CFR 483.75(r), (s) (effective August 26, 2013 to November 27, 2016).]

The circuit court does not appear to have considered these regulations in rendering its decision.[4] Redding admitted that she had not obtained prior approval of Hyland's closure plan. Additionally, eight patients were never transferred out of Hyland but instead remained in the facility without documentation that they did not require nursing home care and that assisted living would be "the most appropriate facility" for those individuals as required by 42 CFR483.75(r)(3). Accordingly, the ALJ's conclusion that Hyland had failed to have the plan approved prior to issuing the notice to its patients was supported by substantial evidence. Further, because Hyland continued operations without complying with these requirements, its closure as a nursing home was never effectuated.

---

[3] 42 CFR 483.75 was subsequently amended by 81 FR 64032, effective July 1, 2016, 81 FR 64032, effective November 15, 2016, 81 FR 68861, 68865, effective November 28, 2016, and 82 FR 32259, effective July 13, 2017. The facility closure provisions are now found in 42 CFR 483.70(l) and (m).

[4] To the extent that the circuit court could be deemed to have considered the regulations or any statutory authority, interpretation of a statute is reviewed de novo on appeal. *Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015).

Finally, while Hyland relinquished the evidence of its certificate of licensure as of November 2015, LARA repeatedly advised Hyland to maintain the nursing home license until it could qualify for a HFA license. The QAAP statute in effect at the time Hyland attempted to relinquish its license required that the QAAP tax be assessed upon "licensed" nursing homes. Former MCL 333.20161(1)(g); former MCL 333.20161(11)(i). "Nursing home" is defined as "a nursing care facility, including a county medical care facility, that provides organized nursing care and medical treatment to 7 or more unrelated individuals suffering or recovering from illness, injury, or infirmity." MCL 333.20109(1). The Michigan Department of Consumer and Industry Services, Bureau of Health Systems, Division of Health Facility Standards and Licensing has promulgated a myriad of administrative rules that address nursing homes and nursing care facility standards. These administrative rules are published in the Michigan Administrative Code. Among those rules, Mich Admin Code, R 325.20201 specifically prohibits a person from establishing, maintaining, or operating a nursing home unless licensed. The corollary licensing statute defines "license" as an authorization "granted by [LARA] *and* evidenced by a certificate of licensure or permit granting permission to a person to establish or maintain and operate, or both, a [nursing home]." MCL 333.20108(2) (emphasis added).

In this case, it is undisputed that Hyland maintained eight patients whom had been initially placed at Hyland when the facility operated as a nursing home. However, as noted above, Hyland's license was never effectively surrendered due to its failure to obtain state approval of its closure plan. Subsequently, Hyland continued to provide care for these remaining patients and was authorized by LARA to do so under its nursing home license. Indeed, Redding was instructed to maintain the nursing home license until she received HFA approval. Accordingly, despite the fact that she returned the physical license, it is clear from the record that the nursing home closure was never effectuated and that Hyland nevertheless continued to operate as a nursing home with LARA's authorization to do so. Consequently, as a matter of law, the ALJ appropriately concluded that Hyland continued to operate as a nursing home and the assessment of the QAAP tax was appropriate.

The ALJ's decision was also not arbitrary or capricious. "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott*, 298 Mich App at 162. As discussed above, the ALJ's decision was based on a sound determining principle, namely that the QAAP tax is required of licensed nursing homes. "Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views." *Dignan*, 253 Mich App at 576 (quotation marks and citation omitted). Accordingly, there is no support for the circuit court's conclusion that ALJ's ruling was arbitrary and capricious.

In sum, because the circuit court misapplied legal principles, its decision was clearly erroneous. See *Nason*, 290 Mich App at 424. Further, because the ALJ's decision was in accordance with law, and was supported by competent, material, and substantial evidence on the whole record, it should have been upheld. *Id.* Accordingly, this Court is left with a definite and firm conviction that a mistake was made by the trial court. See *VanZandt*, 266 Mich App at 596.

We reverse the order of the circuit court and reinstate the final order of DHHS adopting the decision of the ALJ.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause