DEPARTMENT OF COMMUNITY HEALTH v RISCH

Docket Nos. 263711, 263712. Submitted February 13, 2007, at Lansing. Decided February 27, 2007, at 9:00 a.m.

The Department of Community Health filed administrative complaints with the Board of Psychology and the Board of Social Work, alleging that Julie A. Risch violated MCL 333.16221 by engaging in a sexual relationship with a patient and subsequently altering medical records, or causing medical records to be altered, and withholding them to make it appear that the individual was not her patient. The complaints were consolidated for hearing, but the first hearings examiner recused himself, following a motion by the respondent, on the ground of an appearance of partiality. A second hearings examiner continued the case and issued a proposal for decision in which he found that the respondent had violated the statute by maintaining a sexual relationship with her patient and manipulating the records. The disciplinary subcommittees of the boards adopted the hearing examiner's findings of fact and conclusions of law and revoked the respondent's registration to practice as a certified social worker and license to practice as a limited license psychologist. The respondent appealed the revocations, and the Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. The scope of judicial review of a final order of a disciplinary subcommittee imposing sanctions for violations of the Public Health Code is limited to that set forth in Const 1963, art 6, § 28. In a case such as this, in which the respondent does not challenge the subcommittees' authority to revoke her registration and license, the reviewing court need determine only whether the subcommittees' decisions were supported by competent, material, and substantial evidence on the whole record. A reviewing court generally will not disturb administrative findings of fact and conclusions of law that are based primarily on credibility determinations because it is not a reviewing court's function to assess witness credibility or resolve conflicts in the evidence. A reviewing court may not set aside factual findings supported by the evidence merely because the evidence could support alternative findings or because the court might reach a different result.

2. The extensive record in this matter demonstrates that the disciplinary subcommittees' findings were supported by competent, material, and substantial evidence. The respondent offered arguably viable explanations for the evidence that contradicted her assertions, but the subcommittees' factual findings were based on credibility determinations.

3. The respondent was not denied a fair hearing when the petitioner's counsel gave a witness an outline of questions before the witness's deposition. The respondent subsequently introduced that document to aid the hearings examiner in assessing the witness's credibility.

4. The respondent was not deprived of a fair hearing by the continuation of the proceedings following reassignment to a new hearings examiner. The respondent's counsel waived any claim for a mistrial by not objecting to the second hearings examiner's intended mode of proceeding with the hearing. The proposal for decision indicated that the hearings examiner reviewed the transcripts of those portions of the hearing over which he did not preside and was familiar with the evidence, arguments, and objections presented earlier. Although not present for the respondent's cross-examination testimony at the beginning of the hearing, the hearings examiner presided over her direct testimony and was able to gauge her credibility.

5. While an affidavit by the respondent's counsel submitted on appeal avers that several members of the disciplinary subcommittees had not reviewed the whole record, it is not part of the record on appeal and is insufficient to support the claim that the subcommittees' orders were not entered in accordance with due process. The orders themselves indicate that the subcommittees reviewed the record before reaching their decision, as required by MCL 24.285.

Affirmed.

ADMINISTRATIVE LAW — LICENSES — HEALTH PROFESSIONALS — APPEALS — SCOPE OF REVIEW.

The scope of judicial review of a final order of the disciplinary subcommittee of the licensing board or registration board for a health profession imposing sanctions for violations of the Public Health Code is limited to a determination whether the order is authorized by law and, if a hearing is required, whether the order is supported by competent, material, and substantial evidence on the whole record; a reviewing court generally will not disturb administrative findings of fact and conclusions of law that are based primarily on credibility determinations, and the reviewing

court may not set aside factual findings supported by the evidence merely because the evidence could have supported alternative findings or because the court might have reached a different result (Const 1963, art 6, § 28; MCL 24.315[4], 333.16101 *et seq.*).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Howard C. Marderosian*, Assistant Attorney General, for the petitioner.

*Carol Holmes, P.C.* (by *Carol Holmes*), for the respondent.

Before: HOEKSTRA, P.J., and MARKEY and WILDER, JJ.

PER CURIAM. In these consolidated appeals, respondent appeals as of right the final orders of the disciplinary subcommittees of the Department of Community Health Board of Psychology and Board of Social Work, revoking respondent's registration to practice as a certified social worker (CSW) and license to practice as a limited license psychologist (LLP) for violations of article 15 of the Public Health Code (PHC), MCL 333.16101 *et seq.* We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

In administrative complaints filed with the boards of psychology and social work, petitioner alleged that respondent inappropriately began a sexual relationship with Janet Rivera-Porn[1] at a time when both Janet and her minor son were being treated by respondent for

---

[1] At the outset of the period relevant to this appeal, Janet was married to Charles Porn. However, shortly thereafter the two were divorced, after which Janet reverted to the use of her maiden name, Rivera. As a result, Janet is alternatively referred to throughout much of the testimonial and documentary record at issue here as either "Janet Porn" or "Janet Rivera." For consistency and ease of reference, Janet will be referred to in this opinion as either "Janet Rivera-Porn" or simply "Janet."

mental health issues at the Mapleview Consultation
Center (MCC). Petitioner further alleged that after
receiving notice that Janet intended to file a civil suit
for malpractice arising from the relationship, respon-
dent directed an MCC employee to alter MCC computer
records "in order for it to appear that [Janet] was not a
patient of [r]espondent," and that respondent herself
altered and removed or withheld MCC records for this
purpose. Petitioner asserted that respondent's conduct
in these regards violated § 16221 of the PHC, which
requires the boards' disciplinary subcommittees to im-
pose specified sanctions, including revocation of licens-
ing and registration privileges, upon finding that one or
more of the following grounds exist:

> (a) A violation of general duty, consisting of negligence
> or failure to exercise due care, . . . whether or not injury
> results, or any conduct, practice, or condition that impairs,
> or may impair, the ability to safely and skillfully practice
> the health profession.
>
> (b) Personal disqualifications, consisting of one or more
> of the following:
>
> (i) Incompetence.
>
> * * *
>
> (vi) Lack of good moral character. [MCL 333.16221.]

In defense of these allegations, respondent denied
having ever provided treatment to Janet. Although
acknowledging the existence of appointment, billing,
and other records and documentation to the contrary,
respondent asserted that those records were created,
and in some instances altered, in connection with her
treatment of Janet's son. Specifically, respondent as-
serted that Janet's son had exhausted his health-care
insurance benefits and that she therefore employed a
treatment and billing process known as "family ben-

efits," whereby a patient who has exhausted his or her health-insurance benefits is assigned the treatment benefits of a covered family member in order to continue insurance-sponsored treatment. Respondent further asserted that her efforts in obtaining a stress-related leave of absence from work for Janet were also for the benefit of Janet's son, and were made solely to enable Janet to have the time and emotional stability necessary to ensure that he received needed evaluation and treatment.

After the parties were unable to resolve this matter through settlement and compliance procedures, the administrative complaints were consolidated for evidentiary hearing and decision. Hearings examiner C. David Jones presided over the first several days of hearings but recused himself on a motion by respondent on the ground that "tension" between himself and counsel for respondent "may create an appearance of partiality." The case was subsequently reassigned to hearings examiner James L. Karpen, who, following the conclusion of the testimony and evidence, issued a proposal for decision in which he found that Janet was in fact a patient of respondent and that respondent had altered records, or caused them to be altered, and had withheld records in order to hide that fact following the filing of the civil suit. Karpen further concluded that respondent's conduct in this regard, as well as in maintaining a sexual relationship with Janet, demonstrated incompetence, a lack of good moral character, and the failure to exercise due care, in violation of § 16221. After adopting these findings of fact and conclusions of law, the disciplinary subcommittees ordered that respondent's registration to practice as a CSW and license to practice as an LLP be revoked "for the violations of sections 16221(a), 16221(b)(i), and 16221(b)(vi) of the Public Health Code . . . ."

## II. ANALYSIS

### A. FACTUAL BASIS FOR REVOCATIONS

On appeal, respondent argues that the disciplinary subcommittees' final orders must be set aside as both unsupported by the evidence and abuses of discretion. Specifically, respondent asserts that the testimony and evidence submitted at the hearing does not support the conclusion that Janet was ever her patient or that she manipulated or withheld records in order to hide that fact. We disagree.

### 1. SCOPE OF REVIEW

Before addressing the merits of respondent's challenge to the factual basis for the disciplinary subcommittees' final orders, we must determine the appropriate scope of our review. Section 16237(6) of the PHC provides that a final decision of a disciplinary subcommittee may be appealed as a matter of right "only to the court of appeals." MCL 333.16237(6). The PHC is, however, silent regarding the scope of review to be applied in such matters. Section 106 of the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, sets forth the following scope of review:

(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

(a) In violation of the constitution or a statute.

(b) In excess of the statutory authority or jurisdiction of the agency.

(c) Made upon unlawful procedure resulting in material prejudice to a party.

(d) Not supported by competent, material and substantial evidence on the whole record.

(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

(f) Affected by other substantial and material error of law. [MCL 24.306.]

However, § 115(4) of the APA exempts final orders of disciplinary subcommittees rendered pursuant to article 15 of the PHC from this scope of review. See MCL 24.315(4).[2] Thus, the legislatively enacted standard of review of MCL 24.306 does not apply, and no other legislative enactment provides an applicable scope of review. There being no statutorily enacted scope of review, we conclude that judicial review of the disciplinary subcommittees' orders is limited to that set forth in Const 1963, art 6, § 28, which provides in relevant part:

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.[3]

_____

[2] MCL 24.315(4) states that "[c]hapter 6 [of the APA, MCL 24.301 *et seq.*] does not apply to final decisions or orders rendered under article 15 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.16101 to 333.18838 of the Michigan Compiled Laws."

[3] In reaching this conclusion, we recognize that § 16226(2) of the PHC refers to § 106 of the APA. We note, however, that this subsection does not mandate application of the scope of review set forth in chapter 6 of the APA. Rather, § 16226(2) requires only that

[i]f, during judicial review, the court of appeals determines that a final decision or order of a disciplinary subcommittee preju-

Respondent does not challenge the authority of the disciplinary subcommittees to revoke her licensing and registration for violations of § 16221 of the PHC. Consequently, we need only determine whether the subcommittees' decisions to do so "are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28.

When reviewing whether an agency's decision was supported by competent, material, and substantial evidence on the whole record, a court must review the entire record and not just the portions supporting the agency's findings. *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 588; 701 NW2d 214 (2005). " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998).

Moreover, if the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence. *Hitchingham v Washtenaw Co Drain Comm'r*, 179 Mich App 154, 159; 445 NW2d 487 (1989); *Reed v Hurley Med Ctr*, 153 Mich App 71, 76; 395 NW2d

dices substantial rights of the petitioner for 1 or more of the grounds listed in section 106 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.306, and holds that the final decision or order is unlawful and is to be set aside, the court shall state on the record the reasons for the holding and may remand the case to the disciplinary subcommittee for further consideration. [MCL 333.16226(2).]

Thus, by its plain language, this section does not provide any direction regarding the scope of review to be employed by this Court.

12 (1986). A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result. *Black v Dep't of Social Services*, 212 Mich App 203, 206; 537 NW2d 456 (1995).

### 2. APPLICATION

In challenging the evidence supporting the disciplinary subcommittees' findings that Janet was a patient at MCC and that respondent altered records, or caused records to be altered, and withheld them to cover up or otherwise hide that fact, respondent argues that several employees and practitioners at MCC acknowledged the use of family benefits as a billing practice at MCC. However, in finding that Janet was a patient, hearings examiner Karpen, whose findings of fact were adopted by the disciplinary subcommittees, did not reject the concept of family benefits as a billing practice used at MCC. Rather, Karpen found incredible respondent's claim that billings and other documentary evidence bearing the name of Janet and her husband, Charles, could be explained by the fact that she employed such benefits in order to ensure that Janet's son received all necessary treatment. Indeed, Karpen acknowledged that respondent had presented evidence that family-benefits billing was recognized by several MCC employees and professionals as a valid and appropriate billing method. However, noting that Janet's son had in fact not exhausted his treatment benefits, and that both Janet and Charles denied respondent's claim that she had discussed with them "that they would be losing some of their health benefits so [that Janet's son] could have additional treatment sessions," Karpen rejected respondent's explanation as incredible. While respon-

dent is correct that petitioner presented no evidence to indicate that she or anyone else at MCC knew that the son's benefits had not been exhausted, this was not the only basis for Karpen's finding that respondent was a patient. Karpen also found incredible respondent's claimed belief that she could use her credentials as a CSW and an LLP to aid Janet in obtaining a stress-related leave of absence from work without establishing a counselor-patient relationship. That such a relationship would be established solely by respondent's conduct in this regard was supported by the testimony of petitioner's experts in both social work and psychology.

Furthermore, although not expressly cited by Karpen as a basis for concluding that Janet was a patient of respondent, Janet and Charles both testified that they had each been individually treated by respondent in her capacity as a professional. Their testimony in this regard is supported by other testimony and documents presented during the hearing in this matter, including appointment-book entries and patient-information sheets identifying Janet and Charles as patients, as well as treatment-authorization records of the company contracted by Janet's insurance provider to assess the necessity and propriety of insurance-sponsored treatment outlining in detail the treatment history and goals for both Janet and Charles, which respondent acknowledged were created during conversations between herself and that company's care managers. Although respondent denied having treated either Janet or Charles, and offered arguably viable explanations for nearly every document indicating otherwise, a reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could have been supported by evidence on the record. *Black, supra* at 206. This is especially important when, as here, the agency's choice between such findings is based on

determinations of credibility. *Hitchingham, supra* at 159. As noted above, credibility determinations are within the province of the fact-finder, and it is not the role of this Court to second-guess those findings or substitute its judgment for that of the agency. *Reed, supra* at 76. Rather, the sole function of this Court in reviewing the administrative decisions at issue is to determine whether the disciplinary subcommittees' decisions are supported by competent, material, and substantial evidence on the whole record from which legitimate and supportable inferences were drawn. Const 1963, art 6, § 28. Indeed, resolving conflicting testimony and evidence is precisely the role of the fact-finder. *Hitchingham, supra* at 159; *Reed, supra* at 76. After considering respondent's arguments in light of the testimony and evidence presented at the hearing, we conclude that Karpen's findings regarding credibility and ultimate conclusion that Janet Rivera-Porn was in fact respondent's patient were adequately supported by the record.

We further conclude that the record is similarly adequate to support the findings that respondent altered, or caused to be altered, and withheld records pertaining to her treatment of Janet as a patient. Indeed, respondent herself admitted removing Janet's name from the MCC appointment book and replacing it with that of Janet's son. Although respondent testified that she did so in connection with her use of family-benefits billing, Karpen's rejection of this claim as incredible is properly supported by the evidence. In addition to the evidence discussed above, MCC office manager Kristine Hudson, whom respondent identified as MCC's billing expert, testified that she knew of no reason to change appointment-book entries in order to bill using family benefits. Moreover, Hudson expressly testified that after Janet filed her malpractice suit,

respondent directed her to change computer records of therapy sessions conducted with Janet to reflect that the sessions were for Janet's son. During his testimony at a deposition, attorney James Ford also highlighted discrepancies in progress note copies he obtained during discovery in the civil suit Janet filed against respondent. These discrepancies, which show that the notes were altered to reflect treatment dates more consistent with respondent's defense to that suit, support the finding that respondent attempted to conceal her treatment of Janet by altering records.

Petitioner also presented evidence that despite the fact that respondent denied both orally and in writing that she possessed records pertaining to Janet or her family, billing records were subsequently discovered at respondent's home during the execution of a search warrant in connection with the criminal investigation into this matter. Again, while respondent denied or otherwise offered explanations for each of these events, a reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could have been supported by evidence on the record. *Black, supra* at 206. Contrary to respondent's assertion, the extensive record in this matter demonstrates that the disciplinary subcommittees' findings that Janet was a patient at MCC and that respondent altered, or caused to be altered, and withheld records to cover up that fact was supported by competent, material, and substantial evidence.

### B. DUE PROCESS

Respondent also argues that she was denied her due process right to a fair hearing as a result of misconduct by counsel for petitioner, the continuation of the proceedings following reassignment of her case for hearing

by a new hearings examiner, and the failure of each member of the disciplinary subcommittees to review the entirety of the record in this matter. Again, we do not agree.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 US 133, 136; 75 S Ct 623; 99 L Ed 942 (1955); see also Const 1963, art 1, § 17. Whether respondent's right in this regard was violated is a question of law that this Court reviews de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

In asserting that she was denied a fair hearing, respondent first argues that counsel for petitioner improperly provided expert witness Carol Anderson with a list of questions and expected answers before her deposition and disparaged counsel for respondent by repeatedly referring to her by her first name. With regard to the latter of these arguments, we note that counsel for petitioner ceased this practice after hearings examiner Karpen commented on the matter during a status conference held with the parties after he took over this case. In any event, respondent has failed to cite any evidence to support that these arguably unprofessional but otherwise innocuous events contributed to the disciplinary subcommittees' decisions in this matter. Given this failure, and considering that respondent's counsel herself referred to counsel for petitioner by his first name at various points in these proceedings, we are not persuaded that respondent was denied a fair hearing on this ground.

The record also does not support a conclusion that respondent was denied a fair hearing as a result of the materials provided to Anderson by counsel for petitioner. During her testimony at deposition, Anderson acknowledged having received an outline of the "types"

of questions she would be asked at deposition. However, although also acknowledging that several of the questions contained in the outline had been asked at the deposition, Anderson denied having discussed these questions or their possible answers with counsel for petitioner before giving her testimony. Following Anderson's deposition, counsel for respondent moved to admit the outline into evidence. Karpen found the document to be relevant to assess Anderson's credibility and admitted the outline into evidence over petitioner's objection.

The primary issue in this case was whether Janet Rivera-Porn was in fact a patient. Anderson's testimony, however, consisted primarily of expert opinion regarding whether it violates the minimum standard of care for a CSW to have a sexual relationship with a patient. Respondent conceded during her testimony that such conduct was below the minimum standard of care for such professionals. Moreover, the record makes clear that the hearings examiner was made aware that Anderson had been provided with the outline and considered that fact relevant to the credibility to be afforded her testimony. Under these facts, it cannot be said that respondent was deprived of her right to a fair hearing as a result of Anderson's having been given a copy of the outline.

Respondent also argues that she was deprived of a fair hearing by the continuation of the proceedings following reassignment of her case to Karpen. Specifically, respondent argues that because of the substantial prejudice she suffered as a result of hearings examiner Jones's adverse and erroneous evidentiary decisions, merely replacing Jones with Karpen was insufficient to protect respondent's due process rights. Thus, respondent argues, Karpen's failure to grant a mistrial and begin the proceedings anew denied her a fair hearing.

As previously noted, however, after this case was reassigned to Karpen, he held a status conference to address how best to proceed in this matter. When Karpen indicated during this conference that he would need time to review the testimony and exhibits admitted at the prior evidentiary hearings before taking additional testimony or evidence, counsel for respondent voiced concern regarding whether "proceeding on," as opposed to beginning the evidentiary hearings anew, "would meet the due process needs" of her client. As support for this concern, respondent's counsel asserted that Jones had failed to permit her to make a proper record of several requests to admit evidence that had been denied. Although indicating that counsel for respondent would be permitted to make such a record at the beginning of the next evidentiary hearing, Karpen made clear that he would not revisit Jones's evidentiary rulings. Counsel for respondent offered no objection to proceeding in such a manner, and did not at that point renew her request that a mistrial be declared despite being asked several times whether there was anything else that she wished to raise or discuss regarding the case. Rather, counsel simply responded to Karpen's resolution of her due process concerns by stating, "Okay, very good." In doing so, counsel for respondent waived any claim for a mistrial. See, e.g., *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 92 n 11; 697 NW2d 558 (2005).

In any event, the record does not support a conclusion that the failure to begin the hearing anew affected the outcome of the proceedings. See *Dep't of Consumer & Industry Services v Greenberg*, 231 Mich App 466, 472; 586 NW2d 560 (1998) (applying a harmless-error analysis to a decision of the disciplinary subcommittee of the Board of Optometry rendered under the PHC). While respondent attempts to make much of the fact

that Karpen was not present for the first several days of
testimony, the proposal for decision makes clear that
Karpen reviewed the transcripts of those proceedings
over which he did not preside and was familiar with the
evidence, arguments, and objections presented and
raised during those proceedings. Moreover, we note that
a considerable portion of the testimony given in this
matter, including that of Charles Porn and Carol Ander-
son, was presented by way of deposition transcripts
admitted into evidence as party exhibits without objec-
tion by respondent. Furthermore, as previously dis-
cussed, the decision in this matter from the outset
depended largely on the credibility of respondent's
claim that the documentary evidence labeling or other-
wise identifying Janet as a patient could be explained by
her use of family-benefits billing. Although not present
for respondent's cross-examination testimony at the
outset of the hearings, Karpen presided over the direct
testimony she offered during the presentation of her
case and was thus permitted the opportunity to gauge
firsthand the credibility of her testimony in this regard.
Under the circumstances, respondent was not denied a
fair hearing by the failure to begin the hearing anew.

Finally, we find no merit to respondent's assertion
that she was denied her due process right to a fair
hearing by the failure of the disciplinary subcommit-
tees to review the entirety of the record in this matter
before adopting the hearings examiner's proposal for
decision. As support for her argument in this regard,
respondent has attached to her brief on appeal the
affidavit of her counsel, who avers that immediately
before voting to accept the proposal for decision,
several members of both disciplinary subcommittees
indicated that they had not completely reviewed the
record in this matter.

Respondent is correct that § 85 of the APA requires that a "decision or order shall not be made except upon consideration of the record as a whole . . . ." MCL 24.285; see also 1999 AC, R 338.1630(1) (providing that "[a]fter reviewing the entire record and the opinion of the administrative law judge, the disciplinary subcommittee . . . may enter its final order"). However, as argued by petitioner, the final orders at issue here expressly indicate that the disciplinary subcommittees reviewed the administrative record created in this matter before reaching their decisions. As further argued by petitioner, the affidavit of respondent's counsel to the contrary is not part of the record on appeal, see MCR 7.210(A)(2), and, therefore, is insufficient to support her claim that the final orders were not entered in accordance with statutory or constitutional due process. Consequently, we reject respondent's claim that she was denied her due process right to a fair hearing and affirm the final orders of the disciplinary subcommittees revoking respondent's registration and licensing for violations of § 16221 of the PHC.

Affirmed.