# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COLLEGE PHARMACY.

BUREAU OF HEALTH CARE SERVICES,

      Petitioner-Appellee,

v

COLLEGE PHARMACY,

      Respondent-Appellant.

UNPUBLISHED
February 7, 2017

No. 328828
Department of Licensing and
Regulatory Affairs
LC No. 14-028072

Before: BOONSTRA, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Respondent appeals by right the final order of petitioner revoking its license to practice as a pharmacy in the state of Michigan. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is a pharmacy and prescription drug outlet whose primary facility is located in Colorado Springs, Colorado, and at the time of the proceedings below was licensed as a pharmacy in 47 states. In 2007, the Food and Drug Administration (FDA) brought charges against respondent for illegally compounding human growth hormone (HGH). Specifically, Thomas Bader, respondent's owner in 2007, was charged with purchasing HGH from a wholesaler who in turn had purchased it from a Chinese manufacturer. The product was not FDA registered or approved. Before any conviction occurred, the Colorado Board of Pharmacy (CBP) acted. A settlement was reached in which Bader agreed to step down from his position with respondent and relinquish all his ownership interest in the company. In addition, respondent paid a fine of $250,000 and was placed on probation for a period of seven years. A condition of respondent's probation was that it submit quarterly affidavits to the CBP attesting that, among other things, respondent was not compounding HGH, although it was allowed to sell HGH purchased from a FDA-approved supplier that was registered as a prescription drug wholesaler in Colorado. Jerry Gillick was appointed respondent's pharmacy manager in 2007 and later became CEO of respondent in 2009.

In 2008, a routine audit by the CBP revealed that respondent had purchased HGH from a wholesaler that was not licensed as a prescription drug wholesaler in Colorado. Additionally, a veterinarian in Illinois had ordered HGH from respondent, listing herself as both the patient and the prescribing physician, which is not permitted in Colorado. Gillick testified at his deposition that these events occurred before he took on his current role with respondent. Gillick further testified that before he took over, respondent had nothing in place to determine what type of practitioner was ordering what drug, but that he implemented such controls after learning of the results of the 2008 audit. In 2009, the CBP again placed respondent on probation for seven years (essentially extending respondent's probationary period), and ordered that during its probation respondent was directed to "discontinue the procurement, purchase, sale, distribution, dispensing, transferring or handling . . . of HGH."

In 2013, the CBP issued a letter of admonishment to respondent after an investigation revealed that respondent had placed a seven month "beyond use date" on an injectable medication drug that in fact had a one year "beyond use date."[1] Respondent reported the letter of admonition to the Michigan Board of Pharmacy and to every other state in which it was licensed.

In 2014, petitioner filed an administrative complaint against respondent alleging that under MCL 333.17768(2)(d) it had the authority to impose sanctions on respondent for having its license limited and being subject to administrative penalties by the CBP in 2007, 2009, and 2013. Petitioner further alleged that the "adverse actions by the Colorado Board . . . constitute violations of section 17768(2)(d)" of the Public Health Code, MCL 333.1101 *et seq.*

Following a hearing, the hearing referee issued a proposal for decision. The referee found that respondent's conduct surrounding both the 2007 and 2009 incidents occurred under Bader's leadership and that since Gillick took over respondent had complied with all reporting requirements imposed on it. Nevertheless, the referee concluded that because administrative penalties had been imposed against respondent, "[p]ursuant to the Public Health Code Section 17768(2)(d), this constitutes grounds for action by the Michigan Board of Pharmacy." Petitioner's disciplinary subcommittee "accepted the . . . Findings of Fact and Conclusions of Law in the Proposal for Decision" and revoked respondent's "license to practice as a pharmacy in the state of Michigan."[2] This appeal followed.

## II. STANDARD OF REVIEW

Final orders of "disciplinary subcommittees rendered pursuant to article 15 of the [Public Health Code, MCL 333.1101 *et seq.*]" are exempt from the standard of review provided in MCL 24.306 of the Administrative Procedures Act, MCL 24.201 *et seq.*, which provides for

---

[1] Gillick testified that the term "beyond use date" refers to a drug's expiration date.

[2] On appeal, respondent asks us to consider an affidavit executed by its attorney attesting to certain statements made at the meeting during which the decision to revoke respondent's license was reached. This affidavit is not part of the agency record, so we will not consider it. MCR 7.210(A).

setting aside a decision that is "[a]rbitrary, capricious or clearly an abuse or unwarranted exercise of discretion." *Dep't of Community Health v Risch*, 274 Mich App 365, 370-371; 733 NW2d 403 (2007). When a respondent challenges the imposition of a particular sanction, but does not challenge the authority of a disciplinary subcommittee to issue such a sanction, "we need only determine whether the subcommittee[']s[] decisions to do so are 'supported by competent, material, and substantial evidence on the whole record.' " *Id*. at 372, quoting Const 1963, art 6, § 23.

"When reviewing whether an agency's decision was supported by competent, material, and substantial evidence on the whole record, a court must review the entire record and not just the portions supporting the agency's findings." *Risch*, 274 Mich App at 372. " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998).

## III. ANALYSIS

Respondent argues that petitioner erred by revoking its pharmacy license instead of imposing a lesser sanction, and that the disciplinary subcommittee failed to consider mitigating factors in making its decision. We disagree.

Petitioner revoked respondent's pharmacy license under MCL 333.17768(2)(d), which states:

> (2) In addition to the grounds set forth in subsection (1), and in a manner consistent with part 161, the board may fine, reprimand, or place on probation a person licensed under this part, may deny, limit, suspend or revoke a license issued under this part, or may order restitution or community service if the board finds that any of the following apply to an applicant; a partner, officer, or member of the board of directors of a pharmacy, manufacturer, or wholesale distributor licensed under this part; a stockholder of a pharmacy, manufacturer, or wholesale distributor that is a privately held corporation licensed under this part; or a facility manager for a wholesale distributor designated under section 17748(2):

> * * *

> (d) The applicant or other person described in this subsection has maintained a financial interest in a pharmacy, manufacturer, or wholesale distributor that has been denied a license or federal registration, has had its license or federal registration limited, suspended, or revoked, or has been subject to any other criminal, civil or administrative penalty.

The referee concluded that grounds for action against respondent were justified under this statute because respondent had administrative penalties imposed against it by the CBP in 2007, 2009, and 2013. Petitioner adopted the referee's conclusions as its own.

Respondent does not contest that § 17768(2)(d) authorizes petitioner to revoke its license if it has been subject to an administrative penalty in another state. Further, respondent does not argue that the orders of the CBP in 2007 and 2009 were not administrative penalties, although it challenges the classification of the letter of admonishment in 2013 as such a penalty. Rather, it argues that the order revoking its license should be overturned because that order failed to comply with administrative rules regarding the adoption, modification, or rejection of a proposal for decision. Specifically, respondent relies on Mich Admin Code, R 338.1630, which states in relevant part:

> (4) After reviewing the findings of fact and conclusions of law, the disciplinary subcommittee, board, or task force may make revisions. In making revisions, the disciplinary subcommittee, board, or task force shall specifically identify those portions of the findings of fact or conclusions of law, or both, that it is modifying or rejecting and identify evidence from the record that supports its revisions.

> (5) A disciplinary subcommittee, board, or task force, in its final order, may adopt, modify, or reject, in whole or in part, the opinion or proposal for decision of the administrative law judge. If the disciplinary subcommittee, board, or task force modifies or rejects the opinion or proposal for decision, the reason for that action shall be stated in the final order.

Respondent argues that petitioner "modified or rejected" the mitigating circumstances identified by the hearing referee in her PFD without properly stating a reason for the rejection or modification and identifying evidence from the record to support the revisions. Specifically, respondent argues that petitioner failed to consider the findings of fact by the ALJ that stated that Gillick had implemented a system to track wholesaler licensing after the 2007 and 2009 actions, that respondent no longer did bulk distribution, and that no product safety allegations had been filed against respondent since Gillick took over respondent's operation. The PFD also stated, in its "Conclusions of Law" section, that the "Michigan Board of Pharmacy may consider, as mitigation, the above Findings of Fact establishing that the current pharmacy manager of Respondent was specifically approved by the Colorado Board to take over from a previous owner/manager who was in charge when the acts leading to sanctions occurred." However, the PFD did not state that these mitigating circumstances should warrant a lesser sanction or propose a specific sanction.

We conclude that the final order issued by petitioner did not modify or reject the PFD. The final order stated that it was accepting both the findings of fact and the conclusions of law of the proposal for decision. By adopting the findings of fact and conclusions of law found in the PFD, petitioner merely adopted the statement that it *may* consider mitigating factors in determining its sanction. The word "may" indicates an action that is discretionary, not mandatory. *See Detroit Edison Co v Stenman*, 311 Mich App 367, 384 n 8; 875 NW2d 767 (2015). Petitioner was thus free, in its discretion, not to consider the mitigating factors identified. Further, the PFD did not indicate that consideration of the mitigating factors it identified should lead to the result hoped for by respondent—a lesser sanction. In the end, respondent's argument is that petitioner should have given the mitigating factors identified more weight and therefore imposed a lesser sanction. But when there is sufficient evidence to support

-4-

an administrative decision, "a reviewing court may not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result." *Black v Dep't of Social Servs*, 212 Mich App 203, 206; 537 NW2d 456 (1995). Here, petitioner was presented with competent, material, and sufficient evidence in support of the imposition of a sanction under MCL 333.17768(2)(d), and it acted within its authority in revoking respondent's license.[3]

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola

---

[3] We find respondent's citation of two unpublished cases from this Court unpersuasive, as neither is binding, MCR 7.215(C)(1), and both are distinguishable, in that the present case does not involve the issuance of an order that was contrary to the PFD. Nor is the fact that other states chose not to sanction respondent in the same manner relevant to our review of petitioner's decision.