# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

UNPUBLISHED
February 14, 2017

Petitioner-Appellee,

v

No. 330451
Department of Licensing and
Regulatory Affairs
LC No. 14-018328

BRUCE PHILLIP LANGLOIS, D.V.M.,

Respondent-Appellant.

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and METER, JJ.

PER CURIAM.

Respondent, a veterinarian, appeals as of right an order of the Disciplinary Subcommittee of the Board of Veterinary Medicine (part of the Bureau of Health Care Services in the Department of Licensing and Regulatory Affairs) that revoked respondent's veterinary medicine and controlled substance licenses and fined him $25,000. We affirm.

Respondent testified that his practice consists of a full-service animal clinic and "two mobile clinics called the Spay Neuter Express," which "offer low-cost spays, neuters, vaccinations, and parasite control." According to respondent, each mobile clinic is "a complete hospital on wheels. We've got everything, basically, that we have in our brick-and-mortar clinic." Respondent explained that he does "at least a thousand surgeries a month."

Respondent contends that the decision was not supported by competent, material, and substantial evidence. We review challenges to the factual basis for a disciplinary subcommittee's final order to determine whether it is " 'supported by competent, material, and substantial evidence on the whole record.' " See *Dep't of Community Health v Risch*, 274 Mich App 365, 371-372; 733 NW2d 403 (2007), quoting Const 1963, art 6, § 28. " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion." *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998). An appellate court must generally defer to an agency's administrative expertise and to its findings of fact regarding conflicts in the evidence. *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 497; 813 NW2d 763 (2011).

Respondent challenges the determination that he provided substandard care to multiple animals. However, administrative findings of fact must be accorded deference when based on credibility determinations. *Risch*, 274 Mich App at 372. "[S]uch findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence." *Id.* The extensive and detailed testimony of veterinarians Joseph Kline and Suzanne Laskaska provided competent, material, and substantial evidence advanced in support of the decision.

Respondent's appellant argument regarding the care provided to his patients is vague, but he does specifically challenge the determination that he failed to adequately arrange for follow-up care for animals on which he performed surgery. Laskaska testified that the owner of a dog named Pepper was unable to reach respondent with follow-up issues after he performed surgery. Kline testified that such behavior is below the standard of care:

> *Q*.  There's been testimony that, essentially, the Spay Neuter Express comes to certain communities for a day or two at a time and then moves on. What do you feel needs to be done to meet the standard of care, in your professional opinion, for such a service?
>
> *A*.  It simply has to provide for backup care when they leave the community. Somebody has to be responsible to see these animals, to deal with complications that may happen.
>
> *Q*.  Is it enough just to tell people to see a vet if anything goes wrong?
>
> *A*.  Unacceptable.
>
> *Q*.  What do you need to do?
>
> *A*.  You're responsible. You're the one who did the work. You have to pass them on to someone else.
>
> *Q*.  So you line somebody else up to cover for you if you're not there. Is that it?
>
> *A*.  One hundred percent.
>
> *Q*.  And if you don't line somebody up, you're responsible if something goes wrong?
>
> *A*.  You've abandoned the patient.
>
> *Q*.  How bad is abandoning the patient?
>
> *A*.  It's below the standard of care.

Kline further testified that "[i]f you've initiated the care, you're responsible for that care, period. No exception to that. You don't have to pick up new care from them. You don't have to do

additional work for them. But if you've initiated something, you're responsible for that. No exception."

Respondent challenges the determination that he kept inadequate records. Respondent testified that his records were complete, just simply not compiled, but in at least one case, that of Pepper, respondent admitted that the existing records could potentially be considered deficient. Respondent operated on Pepper in early 2012, and he admitted at the hearing on October 28, 2014, that his records had not documented the location of Pepper's preexisting skin infection. Regarding the issue of rabies certificates, Laskaska testified that she received a three-year rabies vaccination certificate for a cat named Devon. Laskaska testified that she saw Devon on November 21, 2012, approximately eight months after the issuance of the rabies certificate. She testified that the records seemed to indicate that this had been Devon's first rabies vaccination and, by law, the first rabies vaccine a patient receives must be a one-year vaccine. Laskaska clarified that "it doesn't matter whether it's an actual three-year vaccine or a one-year vaccine that is given the first time an animal receives it," because "the first time the patient is vaccinated, their immune system cannot protect them for three years." When asked whether recording a one-year vaccination as a three-year vaccination would "cause the owner of the animal to be under the illusion that the animal was protected for three years," Kline responded, "We do not expect the public to interpret it any other way." In addition, Laskaska testified that the rabies vaccination certification she received for Devon was unsigned. Laskaska explained that "[a] rabies vaccination certificate is only considered a valid legal document if it has the actual veterinarian's signature on it." Kline opined that the sending out by a veterinarian of an unsigned rabies vaccination certificate is evidence that the veterinarian is practicing below the standard of care. He testified that "anything that compromises [rabies vaccine] records is below the standard of care" and indicated that respondent was ultimately responsible for issuing a proper certificate.

Respondent argues that the ALJ abused her discretion by delaying, until the proposal for decision was issued, a ruling on whether the correct medical record retention requirement is three or seven years. We find no basis for reversal. Indeed, the ALJ concluded that the retention requirement was three years and that petitioner had not established a violation on this point. Respondent's appellate brief is less than clear, but he appears to be arguing that because veterinary records are only required to be kept for three years, he should not be penalized for *anything* occurring more than three years before the hearing. This argument is specious, and respondent does not support it with any authority. Moreover, with regard to inadequate recordkeeping in general, there was adequate evidence that respondent kept inadequate records within three years of treatment.

Affirmed.


/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Patrick M. Meter

-3-