*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re AFFLECK/KUTZLEB/SIMPSON, Minors.

UNPUBLISHED
August 15, 2019

No. 347045
Oakland Circuit Court
Family Division
LC No. 2017-852703-NA

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Respondent-mother (respondent), appeals by right an order terminating her parental rights to her three minor children, KPA, BEK, and BAS, under MCL 712A.19b(3)(c)(*i*), (g) and (j).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In April 2017, petitioner filed a petition to remove the children from respondent's care after respondent and BAS's father had a multiple-day "bender" in a hotel room with the children present, during which episode respondent drank alcohol, used illicit substances, and was arrested for possession of Xanax and heroin.[2] The children were not fed properly and during the episode were surrounded by drug paraphernalia and needles.

---

[1] The fathers of KPA and BAS were also respondents in the proceedings below and had their parental rights terminated; however, they are not parties to this appeal. A separate petition was filed concerning BEK's father's parental rights; his case was not concluded at the time the trial court issued its termination order in this matter. BEK's father is also not a party to this appeal.

[2] The petition also cited five previous matters involving respondent or BAS's father for issues including improper supervision, physical abuse, and substance abuse. Petitioner noted that BAS's meconium screen at birth was positive for THC, Phencyclidine, amphetamines, morphine, and methadone.

-1-

Respondent agreed to a service plan to address her substance abuse and improper supervision of the children, but until a supplemental petition seeking termination was filed in April 2018, she made very little progress. She entered a methadone treatment program for her heroin addiction, but continued to use illicit substances in addition to her prescribed methadone. She missed 89 out of 122 drug screens between the filing of the initial and supplemental petitions. She also tested positive for marijuana four times, tested positive for amphetamines in January 2018, and tested positive for amphetamines, cocaine, and Xanax in March 2018. Moreover, because she did not comply with her criminal probation requirement to remain substance-free, she was jailed for several months in early 2018. As a result of her lack of compliance with drug screening requirements and her incarcerations, she missed parenting time with her children.

The supplemental petition seeking termination of respondent's parental rights was filed on April 10, 2018. Although respondent demonstrated more progress with the service plan after the supplemental petition was filed, she still tested positive for amphetamines at back-to-back drug screens in August 2018, just before the beginning of the termination hearings. By the end of the termination hearings in October 2018, respondent had only demonstrated less than 3 months of continuous sobriety. The children's foster care worker opined that at least six months of sobriety in a methadone program is required to measure success. And respondent's psychologist, Kathy Spatafora, testified that a brain addicted to heroin only shows changes after two years of complete sobriety. Therefore, she opined, respondent was still at "ground zero."

Between the filing of the supplemental petition and the termination hearing in August 2018, respondent regularly attended visitation with her children. Her behavior with the older two children was appropriate, but there were reports that she failed to properly supervise BAS at the park and near a street. Respondent claimed that she was employed at a restaurant, but had failed to verify her employment to petitioner. Moreover, she was still seeking housing. Respondent's mother expressed concern that respondent could not yet financially support the children with only a part-time job.

At a combined statutory grounds for termination/best-interest hearing that concluded in October 2018, the trial court found that statutory grounds to terminate respondent's parental rights existed, stating with regard to MCL 712A.19b(3)(c)(i):

Undoubtedly, more than 182 days have passed since the issuance of Respondent-Mother's initial dispositional order. At the time the supplemental petition was filed, Respondent-Mother had made no progress on her [service plan]. She repeatedly missed drug screens, admittedly relapsed, and tested positive for a variety of substances including, heroin, marijuana, cocaine, amphetamines, and Xanax all while receiving substance abuse treatment and counseling. In addition, Respondent-Mother had no housing, no employment, had not completed parenting classes, and failed to complete mental health treatment as recommended. Respondent-Mother's substance abuse issues date back 15 years and she failed to comply with and benefit from services. Given the length of time that has passed and the lack of benefit and compliance with services the court finds that there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the children's ages.

Thus, the court finds by clear and convincing evidence that more than 182 days have passed since issuance of the dispositional order and Respondent-Mother has failed to rectify the conditions that brought her children into care and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the children's ages.

The trial court found that the same evidence also supported termination under MCL 712A.19b(3)(g) and (j), noting that

Respondent-Mother does not have suitable housing or employment or a suitable plan for the children. And there was no evidence that she would be able to provide suitable housing for the children in the reasonably foreseeable future.

Moreover, the facts do not show that there is a reasonable expectation that Respondent-Mother would be able to provide proper care and custody within a reasonable amount of time considering the children's ages. She has a long history of substance abuse problems that she has had difficulty managing. She repeatedly relapsed during this case while receiving services and treatment.

Regarding the best-interests of the children, the trial court noted that KPA and BEK were placed with their maternal grandmother; BPA was placed in non-relative foster care. The trial court found that the maternal grandmother had an appropriate home, was bonded with KPA and BEK, and was willing to adopt them, although the children also shared a bond with respondent. The court found that the "children's needs for stability, permanency, and finality . . . are not outweighed by the bond or relative placement." Regarding BPA, the trial court noted that her foster mother was willing to adopt her, that BPA had demonstrated behavior problems in response to respondent's parenting time visits, and that maintaining her current placement was in her best interests.

The trial court issued an order terminating respondent's parental rights to the three children. This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by holding that clear and convincing evidence supported termination of her parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree. We review for clear error a trial court's determination regarding statutory grounds for termination. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A finding of fact is clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000). When reviewing a trial court's findings of fact, we give deference to the special opportunity of the trial court to judge the credibility of the witnesses. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

The trial court found that termination of respondent's parental rights was justified under MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err by finding that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Respondent does not dispute that the statutory 182-day period had passed by the time of the termination hearing. Respondent has a nearly two-decade long history of substance abuse, including periods of sobriety and relapse. During the pendency of the proceedings below, she missed the majority of her drug screens and tested positive for various substances several times, including testing positive for amphetamines at back-to-back drug screens in August 2018, just before the beginning of the termination hearings.[3] Respondent only demonstrated about 2-1/2 months of sobriety before the hearings ended. The foster care worker opined that at least six months of sobriety in a methadone program is required to measure success. And Spatafora testified that, based on the heroin-addicted brain's need for two years of complete sobriety, respondent was still at "ground zero." Further, respondent was unable to verify her claimed employment and still lacked housing at the time of the termination hearing. Given respondent's long substance abuse history and high risk of relapse after only minimal sobriety, as well her lack of ability to support and supervise the children, the trial court did not clearly err by finding that there was no reasonable likelihood that respondent would resolve her continuing issues within a reasonable time. Clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*).

---

[3] Respondent relies on her explanation that she mistakenly took KPA's medication, but the trial court did not find that explanation credible. We defer to the trial court's credibility determinations. *Dep't of Community Health v Risch*, 274 Mich App 365, 375; 733 NW2d 403 (2007) ("credibility determinations are within the province of the fact-finder, and it is not the role of this Court to second-guess those findings or substitute its judgment").

Respondent argues that the trial court acted hastily by terminating her parental rights after only 19 months and that she should have been given more time. But MCL 712A.19b(3)(c)(*i*) authorizes termination for failure to rectify the conditions leading to the adjudication after as little as 182 days. "[T]he Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time." *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991), citing MCL 712A.19b(3)(c)(*i*). Respondent was afforded more than three times the statutory period to resolve the conditions that led to the children's adjudication, and the trial court did not clearly err by concluding that respondent still was not reasonably likely to resolve her issues within a reasonable period of time.

Respondent also argues that instead of ordering the supplemental petition, the trial court should have ordered additional mental health services. If a respondent takes issue with the services provided, there exists a responsibility on the part of the respondent to raise objections to the services offered when the trial court adopts a case-service plan or soon thereafter. *Mason*, 486 Mich at 152. Respondent does not point to any request that she made for additional mental health services. Respondent completed a mental health screening at Oakland Community Health Network, but failed to follow up by making an intake appointment for mental health treatment services. When respondent contemplated suicide in March 2018, the foster care worker directed her to Common Ground or the emergency room, but she went to neither. Moreover, respondent thereafter denied any suicidal ideations. Respondent has not demonstrated that she was denied additional services that would have allowed her to address the issues that led to the children's removal; rather, the record shows that respondent had no interest in engaging in mental health treatment.

If at least one ground for termination exists, this Court need not consider the additional grounds on which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Nevertheless, the evidence also supported termination of respondent's parental rights under MCL 712A.19b(3)(g) and (j).

A parent's failure to comply with a service agreement is evidence of the parent's failure to provide proper care and custody of the child. *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). The children were taken into care after respondent's arrest for possession of Xanax and heroin, despite numerous prior cases and services having been offered to address her issues with substance abuse and improper child supervision. Nearly a year later, she was again incarcerated for a violation of probation related to her continued drug use. After the supplemental petition and her release from jail, and although respondent began completing more drug screens, regularly attending substance abuse treatment, and visiting the children, other service plan requirements remained unfulfilled. Respondent did not maintain her sobriety, cooperate with the terms of her probation, or obtain housing. Her caseworker was also unable to verify respondent's claims of employment and completion of a parenting class. Moreover, the court had ordered respondent to utilize a different treatment facility that would be willing to wean her off methadone, but respondent continued to receive daily methadone treatments. Given the length of the proceedings and respondent's failure to comply with her service plan, there was no reasonable expectation that she would be able to provide proper care and custody within a reasonable time considering the children's ages. Clear and convincing evidence supported the termination of respondent's parental rights under MCL 712A.19b(3)(g).

The record also establishes that, based on respondent's conduct or capacity, the children were reasonably likely to be harmed if they were returned to her. The trial court cited respondent's long history of substance abuse, repeated relapses, lack of suitable housing and employment, and lack of a plan for the children. Numerous witnesses testified that respondent's lack of stability was a risk of harm to the children. As respondent moved in and out of BAS's life, the child exhibited behavioral regression and medical issues that doctors attributed to stress. Moreover, respondent made suicide threats during the proceedings, but failed to seek treatment for those feelings and, by the time of the termination hearings, she denied that she had actually been suicidal. Given these facts, we are not left with a definite and firm conviction that the trial court made a mistake when it found a statutory basis for termination under MCL 712A.19b(3)(j).

## III. BEST-INTEREST DETERMINATION

Respondent next argues that the trial court erred by concluding that termination of her parental rights was in the children's best interests. We disagree.

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should weigh all the evidence available to it in determining the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Factors relevant to a determination of the child's best interests include the child's bond to the parent, the parent's parenting abilities, the parent's compliance with his or her case-service plan, the parent's history of visitation with the child, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, and the possibility of adoption. *White*, 303 Mich App at 713-714; *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). In addition, our Supreme Court has explained that a child's placement with relatives is "an explicit factor to consider in determining whether termination was in the children's best interests." *Mason*, 486 Mich at 164. We review for clear error a trial court's best-interest determination. *Id*. at 152.

A preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights was in the children's best interests. The record demonstrates that respondent loves her three children and shares a bond with them. Her severe substance abuse issues, however, had affected all of the children. According to Spatafora, who evaluated KPA, the child appeared to have been "put in the position of being an adult." She was attending counseling. In supervised settings with the two older children, respondent was loving, attentive, and appropriate, but according to the foster care worker who supervised visitation with BAS, intervention was repeatedly required because respondent failed to appropriately monitor the toddler.

At the beginning of the case, respondent spent 30 days in jail. For nearly a year afterward, respondent did not comply with her service plan. She failed to attend drug screens consistently and she continued to use illicit substances. She was then jailed again for violating her probation. Respondent could not visit the children while she was incarcerated or unable to provide a negative drug screen. As a result, significant periods of time passed when the children

did not see respondent. When visitation resumed, BAS's behavior and physical health deteriorated. Moreover, respondent refused to acknowledge any possible effect on BAS related to her own inconsistency.

Spatafora and the children's foster care workers opined that any bond that respondent shared with the children was outweighed by their need for permanency, stability, and finality. Spatafora explained that even though KPA and BEK were placed with the maternal grandmother, instability resulted from the mere possibility that respondent would reenter their lives and then leave again. And BAS was exhibiting behavior and health problems. BAS's foster mother testified that it was not in BAS's best interests to be confused for more than a year about the identity of her family and questioning where she is "going in life" and what her "day-to-day is going to be." BAS's foster care worker opined that it would be a disruption to return BAS to respondent.

KPA and BEK, as well as BAS, were living in appropriate homes with people who were willing to adopt them. BAS stated that she preferred to stay with her foster mother; she would be excited to see respondent for visitation, but was "fine" when respondent would leave. In contrast to the children's current stable homes, respondent had yet to find a home during the 19 months of the proceedings. Her mother expressed concerns that respondent could not financially support the children on her own. Given the children's need for permanency, a safe home, and a parent who could put their needs first, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. *Mason*, 486 Mich at 164.

Respondent argues that the trial court refused to "meaningfully consider the possibility of a guardianship." The purpose of a guardianship is to avoid the termination of parental rights, *Mason*, 486 Mich at 168-169, and it allows a child to maintain a relationship with a parent when placement with the parent is not yet possible, *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). A trial court is not required to establish a guardianship with a relative in lieu of terminating parental rights if it is not in the children's best interests. *In re McIntyre*, 192 Mich App 47, 52-53; 480 NW2d 293 (1991).

Although the maternal grandmother and respondent testified that they would support a guardianship for KPA and BEK, the foster care worker explained that guardianship was not considered by petitioner for the children. She testified that guardianship is not preferred for children under 10 years old because it is not necessarily permanent—the guardian can later terminate it. KPA was eight years old and BEK was five years old. Spatafora similarly opposed a guardianship. Given respondent's long history of substance abuse and relapses, she had not demonstrated a likelihood of long-term stability to warrant a guardianship. Moreover, Spatafora opined that respondent's lack of progress in this case demonstrated additional lack of stability. Again, record evidence demonstrated the children's significant need for stability. The trial court did not err when it relied on Spatafora's recommendation against a guardianship based on the children's need for stability. *McIntyre*, 192 Mich App at 52.

Affirmed.

/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Mark T. Boonstra